```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                                 :
REZA FALLAHI et al.,                                             :
                                                                 :
                              Plaintiffs,                        :
                                                                 :    22-CV-7013 (JMF)
                 -v-                                             :
                                                                 :    MEMORANDUM OPINION
SAYYID EBRAHIM RAISOLSADATI                                      :         AND ORDER
a/k/a EBRAHIM RAISI,                                             :
                                                                 :
                              Defendant.                         :
                                                                 :
-----------------------------------------------------------------X
```

JESSE M. FURMAN, United States District Judge:

In this case, familiarity with which is presumed, Plaintiffs bring claims against Defendant Sayyid Ebrahim Raisolsadati (also known as Ebrahim Raisi), the President of the Islamic Republic of Iran ("Iran"), pursuant to the Alien Tort Statute, 28 U.S.C. § 1350, and the Torture Victim Protection Act, *id.* § 1350 note, alleging that Raisi was responsible for either their torture or the torture and extrajudicial killings of their relatives in a massacre of political prisoners in 1988.  *See* ECF No. 17.  On September 20, 2022, the Court entered a Memorandum Opinion and Order denying Plaintiffs' "*ex parte*" motion seeking leave to effect substitute service on Raisi while he was in this District for the opening of the General Assembly of the United Nations.  *See* ECF No. 21, at 1-2.  The Court did so on the ground that Raisi was, per a "Suggestion of Immunity" filed by the Executive Branch, immune from legal process while he was in the United States for the opening of the United Nations General Assembly.  *See id.* at 2.  The Court declined to reach the question of "whether Raisi would be immune *from suit* pursuant to the doctrine of head of state immunity or otherwise." *Id.* at 3.  "Whether or to what extent Raisi ultimately has to answer for Plaintiffs' claims," the Court noted, "are questions for another day." *Id.*

That day has now arrived. Once again, Plaintiffs move "*ex parte*" for leave to effect substitute service on Raisi, this time outside the United States. *See* ECF No. 23 ("Pls.' Motion"). Once again, the Executive Branch has filed a "Suggestion of Immunity," this time taking the unambiguous position that Raisi, as a sitting head of government, is immune from suit altogether (even as it "vigorously condemn[s]" the conduct upon which Plaintiffs' claims here are based). *See* ECF No. 27 ("U.S. Suggestion"), at 2; *see also* ECF No. 24 (Memorandum Opinion and Order inviting the Executive Branch to clarify its position on whether Raisi is immune from suit altogether). The question presented here is whether the Court must or should defer to the Executive Branch's judgment and dismiss the case against Raisi. The Executive Branch argues that the Court must defer to its judgment. *See* U.S. Suggestion 4-7. Plaintiffs argue that the Court need not and should not because Raisi is, despite the Executive Branch's recognition to the contrary, not the actual head of state or head of government of Iran and, on top of that, is subject to personal sanctions; and because Iran is functionally a pariah state insofar as the United States has no diplomatic relations with the Iranian government and recognizes Iran as a "state sponsor of terrorism." *See* ECF No. 28 ("Pls.' Response"), at 3. Although the Court is sympathetic to Plaintiffs' desire to have their day in court, it is compelled to agree with the Executive Branch.

That conclusion follows from two principles. First, the Supreme Court has long held that, "as a matter of comity," foreign heads of state, heads of government, and foreign ministers are entitled to status-based immunity from suit in United States courts. *See Republic of Austria v. Altmann*, 541 U.S. 677, 688 (2004) (tracing the origins of American foreign sovereign immunity jurisprudence to Chief Justice Marshall's opinion in *Schooner Exchange v. McFaddon*, 11 U.S. (7 Cranch) 116 (1812), concerning a French ship acting under the orders of Napoleon Bonaparte). Second, a court is required to defer to the Executive Branch's "suggestion that a

foreign head of state is immune from suit — even for acts committed prior to assuming office — as a conclusive determination by the political arm of the Government that the continued exercise of jurisdiction interferes with the proper conduct of our foreign relations." *Habyarimana v. Kagame*, 696 F.3d 1029, 1032 (10th Cir. 2012) (cleaned up); *see, e.g.*, *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 486 (1983) ("[T]his Court consistently has deferred to the decisions of the political branches — in particular, those of the Executive Branch — on whether to take jurisdiction over actions against foreign sovereigns . . . ."); *Ye v. Zemin*, 383 F.3d 620, 626 (7th Cir. 2004) ("[A] determination by the Executive Branch that a foreign head of state is immune from suit is conclusive and a court must accept such a determination without reference to the underlying claims of a plaintiff."); *Isbrandtsen Tankers, Inc. v. President of India*, 446 F.2d 1198, 1201 (2d Cir. 1971) ("[O]nce the State Department has ruled in a matter of this nature, the judiciary will not interfere."). Indeed, for almost two hundred years, "American courts have consistently applied the doctrine of sovereign immunity when requested to do so by the executive branch . . . *with no further review of the executive's determination*." *Spacil v. Crowe*, 489 F.2d 614, 617 (5th Cir. 1974) (emphasis added) (footnote omitted).[1]

Plaintiffs' attempts to avoid or overcome these fundamental principles are unavailing. First, Plaintiffs argue that Raisi does not qualify for head of state immunity because he is not a head of state or head of government under Iranian law. *See* Pls.' Motion 4-5. Plaintiffs assert that the Iranian president simply "acts as a kind of emissary or functionary of the Supreme Leader, subject to the pleasure of the latter, and has few if any of the powers and authorities that

---

[1] In the Foreign Sovereign Immunities Act of 1976 ("FSIA"), 28 U.S.C. §§ 1330, 1602-11, Congress superseded the common law with respect to the immunity of foreign *states* and their instrumentalities. *See Habyarimana*, 696 F.3d at 1032 (citing *Samantar v. Yousuf*, 560 U.S. 305, 313 (2010)). "But the FSIA does not alter common law precedents as they bear upon the immunity of individual officials," *id.*, which is the relevant issue here.

are characteristic of a head of government." *Id.* at 5.  The courts, however, are "particularly ill-equipped to second-guess the executive" with respect to such determinations because "[t]he executive's institutional resources and expertise in foreign affairs far outstrip those of the judiciary." *Spacil*, 489 F.2d at 619.[2]  Nor does it matter that the Executive Branch provided "no explanation, no justification, and no citation to any official act of the [State] Department or anyone else reflecting the 'recognition' of Raisi by the United States 'as a sitting head of government.'" Pls.' Response 4.  Although courts are empowered to examine the basis of executive actions in some contexts, "[w]hen the executive branch has determined that the interests of the nation are best served by granting a foreign sovereign immunity from suit in our courts, there are compelling reasons to defer to that judgment without question." *Spacil*, 489 F.2d at 619.  Indeed, "[t]o require the executive to enlighten us with the foundation of its decision to recognize and allow a claim of sovereign immunity might itself create a serious risk of interference with foreign relations.  It cannot be disputed that some legitimate diplomatic maneuvers demand total secrecy." *Id.* at 619-20.

Second, Plaintiffs argue that Iran's status as a pariah state lacking diplomatic relations with the United States and the fact that Raisi himself is under sanctions permit an exception from the general rule.  Pls.' Response 4, 7.  They do not.  For one thing, the doctrine of head-of-state immunity permits no judicial — as opposed to political — exceptions.  Courts "are no more free

---

[2]     Plaintiffs assert that a court would "[s]urely . . . not be required to defer to a designation by the Executive that some foreign personality is a head of state or government when he or she is clearly not, because the President or the Secretary of State fears that the prosecution might cause embarrassment." Pls' Response 6.  Perhaps a court would not be required to defer to the Executive Branch's determination if there were evidence of bad faith — though given the differing roles and competencies of the branches, even that is not self-evident.  But the Court need not and does not decide that question because there is no suggestion, let alone evidence, of bad faith on the part of the Executive Branch here.  That is, there is plainly a plausible case to be made that the President of Iran is the head of the Iranian government.

4

to ignore the Executive Branch's determination than [they] are free to ignore a legislative determination concerning a foreign state." *Ye*, 383 F.3d at 627.  Instead, the Court can and must assume that the Executive Branch took into account "all pertinent considerations," including, presumably, those pressed by Plaintiffs.  *Rich v. Naviera Vacuba S.A.*, 295 F.2d 24, 26 (4th Cir. 1961) ("[T]he doctrine of the separation of powers under our Constitution requires us to assume that all pertinent considerations have been taken into account by the Secretary of State in reaching his conclusion [about immunity].").  If anything, the types of considerations cited by Plaintiffs counsel in favor of *more* caution and deference to the Executive Branch rather than less.  After all, foreign policy judgments with respect to hostile states are likely to be especially sensitive and fraught.  As the Fifth Circuit put it almost fifty years ago, "in the chess game that is diplomacy only the executive has a view of the entire board and an understanding of the relationship between isolated moves.  Will granting immunity serve as a bargaining counter in complex diplomatic negotiations?  Will it preclude a significant diplomatic advance; perhaps a detente between this country and one with whom we are not on the best speaking terms?  These are questions for the executive, not the judiciary."  *Spacil*, 489 F.2d at 619 (citation omitted).

In the final analysis, the fact that Plaintiffs cannot cite a single instance in which a court ignored a suggestion of immunity filed by the Executive Branch speaks volumes.  The best that Plaintiffs can do is to cite the recent decision by Judge Bates in a lawsuit brought against Mohammed bin Salman of Saudi Arabia in connection with the alleged torture and murder of journalist Jamal Khashoggi.  *See Cengiz et al. v. Bin Salman*, No. 20-CV-3009, 2022 WL 17475400 (D.D.C. Dec. 6, 2022).  Judge Bates, they note, "divided the issue into two parts, concluding that, were he to agree with the plaintiffs that the Court 'does not **need** to defer to the Executive Branch,' he would then be required to 'grapple with the intermediate question of

whether the Court **should** nonetheless defer to the Executive Branch's conclusion on the issue — a question grounded in separation of powers principles, not customary international law.'" Pls.' Response 5 (quoting *Cengiz*, 2022 WL 17475400, at *6). True enough, but in the first part of his opinion, Judge Bates reached the same conclusion that the Court reached here: that he was likely required to defer to the Executive Branch's determination. *See Cengiz*, 2022 WL 17475400, at *5-6 & nn.9-10. And in the second part, he concluded that, even if he was entitled to second guess the Executive Branch's determination — "a questionable proposition" — that determination warranted deference for reasons relating to separation of powers. *Id.* at *6-7. The same would be true here, substantially for the reasons discussed above.[3]

In short, although the Court has deep sympathy for Plaintiffs' efforts to seek justice for their alleged wrongs, it has no choice. It is compelled by centuries of precedent to defer to the Executive Branch's determination that Raisi is entitled to immunity from suit as long as he is President of Iran. In light of that conclusion, this case must be and is DISMISSED, and Plaintiffs' motion for substitute service is DENIED as moot. The Clerk of Court is directed to terminate ECF No. 23, to enter judgment in favor of Raisi, and to close the case.

SO ORDERED.

Dated: December 21, 2022
       New York, New York

_____
JESSE M. FURMAN
United States District Judge

---

[3] If anything, the arguments for exercising jurisdiction in *Cengiz* were even stronger than those here because bin Salman was appointed Prime Minister of Saudi Arabia after the case was filed and just before the Executive Branch's statement of interest was due. *See Cengiz*, 2022 WL 17475400 at *4. That is, there was some reason to believe that the appointment was "an attempt to manipulate the Court's jurisdiction." *Id.* (internal quotation marks omitted). Even so, Judge Bates concluded that he was likely required to defer and, regardless, should defer to the determination of the Executive Branch. There is no suggestion here that Iran or Raisi is seeking to manipulate the Court's jurisdiction. Raisi was elected President of Iran in August 2021, before this case was filed, and he has not appeared in this Court, as bin Salman had in *Cengiz*.